439 So.2d 880 (1983)
Ara Williams VanBIBBER, Appellant,
v.
HARTFORD ACCIDENT & INDEMNITY INSURANCE CO., Appellee.
No. 63584.
Supreme Court of Florida.
October 13, 1983.
*881 E.C. Deeno Kitchen, Brian S. Duffy and Robert King High, Jr. of Ervin, Varn, Jacobs, Odom & Kitchen, Tallahassee, for petitioner.
William B. Wiley and Charles A. Stampelos of McFarlain, Bobo, Sternstein, Wiley & Cassedy, Tallahassee, for respondent.
Gabriel Mazzeo, Dept. of Ins., Tallahassee, for Bill Gunter, Ins. Com'r and Treasurer of the State of Florida, amicus curiae.
Robert D. Peltz of Rossman & Baumberger, Miami, for Academy of Florida Trial Lawyers, amicus curiae.
Carl D. Motes of Maguire, Voorhis & Wells, Orlando, for Florida Defense Lawyers Ass'n, amicus curiae.
McDONALD, Justice.
VanBibber appealed the trial court's dismissal of an insurance company as a party defendant. The first district certified the appeal as passing on a question of great public importance or as having a great effect on the administration of justice throughout the state. We have jurisdiction pursuant to article V, section 3(b)(5) of the state constitution.
The issue in this case is the constitutionality of section 627.7262, Florida Statutes (Supp. 1982). A second issue, if the statute is found constitutional, is whether the statute is applicable to causes of action accruing prior to the effective date of the statute. We hold that the statute is constitutional, but that it has no application to a cause of action predicated on events which occurred prior to the effective date of the statute.
VanBibber, claiming an injury, sued Publix Super Markets and its insurance carrier, Hartford, for a claimed tort that occurred on June 25, 1982. Relying on section 627.7262, the trial judge dismissed Hartford from the case,[1] holding the statute both *882 constitutional and applicable to the instant case. On appeal the district court certified the cause to this Court as requiring immediate resolution.
Section 627.7262 reads as follows:
Nonjoinder of insurers. 
(1) It shall be a condition precedent to the accrual or maintenance of a cause of action against a liability insurer by a person not an insured under the terms of the liability insurance contract that such person shall first obtain a judgment against a person who is an insured under the terms of such policy for a cause of action which is covered by such policy.
(2) No person who is not an insured under the terms of a liability insurance policy shall have any interest in such policy, either as a third-party beneficiary or otherwise, prior to first obtaining a judgment against a person who is an insured under the terms of such policy for a cause of action which is covered by such policy.
(3) Insurers are affirmatively granted the substantive right to insert in liability insurance policies contractual provisions that preclude persons who are not designated as insureds in such policies from bringing suit against such insurers prior to first obtaining a judgment against one who is an insured under such policy for a cause of action which is covered by such policy. The contractual provisions authorized in this subsection shall be fully enforceable.
(Footnote omitted.)
It is readily apparent that, by enacting this statute, the legislature sought to modify the third-party beneficiary concept adopted by this Court in Shingleton v. Bussey, 223 So.2d 713 (Fla. 1969), to provide that an injured party has no beneficial interest in a liability policy until that person has first obtained a judgment against an insured. The statute transfers the accrual of a beneficial interest from the date of occurrence until the time an action brought on a tort has matured to a judgment. The statute is quite clear that no cause of action against an insurance company shall accrue until a judgment against an insured is obtained. Moreover, the statute authorizes insurance companies to insert nonjoinder provisions in their insurance policies. The significance of this last provision is found in the language of Shingleton where this Court said:
This requirement of the procedural rules raises the presumption that unless the Legislature in the exercise of its police power regulation of insurance, affirmatively gives insurers the substantive right to insert "no joinder" clauses in liability policies there is no basis in law for insurers to assume they have such contractual right as a special privilege not granted other citizens to contract immunity with their insureds from being sued as joint defendants by strangers.
Id. at 718-19.
In Markert v. Johnston, 367 So.2d 1003 (Fla. 1978), we considered section 627.7262, Florida Statutes (1977), which prohibited the joinder of a motor vehicle liability insurer in an action to determine the insured's liability. We found the statute to be procedural and held it unconstitutional for invading this Court's exclusive rulemaking authority. Thus, if the successor statute under consideration is likewise procedural, and not substantive, it would have to fail on the grounds enunciated in Markert.
We perceive substantial differences between the two statutes. The present statute requires, as a condition precedent to having a third-party interest in an insurance *883 policy, the vesting of that interest by judgment; the prior statute did not. The present statute specifically authorizes a contractual provision prohibiting direct third-party suits; the prior one did not.[2] Because of the differences between the statutes, Markert does not control.
The regulation and supervision of insurance is a field in which the legislature has historically been deeply involved. See chs. 624-632, Fla. Stat. While this Court may determine public policy in the absence of a legislative pronouncement, such a policy decision must yield to a valid, contrary legislative pronouncement. In Shingleton we found that public policy authorized an action against an insurance company by a third-party beneficiary prior to judgment. The legislature has now determined otherwise. Our public policy reason for allowing the simultaneous joinder of liability carrier espoused in Shingleton, therefore, can no longer prevail. Finding that the statute is substantive and that it operates in an area of legitimate legislative concern precludes our finding it unconstitutional. If a statute can be construed to be constitutional it should be. Falco v. State, 407 So.2d 203 (Fla. 1981). We hold that section 627.7262, Florida Statutes (Supp. 1982), is constitutional.
Until the enactment of this statute our pronouncements in Shingleton and Markert authorized, simultaneously, a suit in tort against a tortfeasor and a claim against that tortfeasor's insurance company. The legislature did not make this statute retroactive so we need not concern ourselves with whether this was permissible. We have held today that the statute is substantive. In the absence of clear legislative intent to make them retroactive, substantive statutes are prospective only. Seddon v. Harpster, 403 So.2d 409 (Fla. 1981). Because the incident in this cause occurred prior to the effective date of section 627.7262, October 1, 1982, Shingleton and Markert control this suit.
The order of the trial judge is affirmed to the extent of holding the statute constitutional, but is reversed in holding it applicable to the present suit. The cause is remanded for further proceedings consistent herewith.
It is so ordered.
ALDERMAN, C.J., and OVERTON and EHRLICH, JJ., concur.
SHAW, J., concurs in part and dissents in part with an opinion, in which ADKINS, J., concurs.
BOYD, J., dissents with an opinion.
SHAW, Justice, concurring in part and dissenting in part.
The incident in this case occurred prior to the effective date of section 627.7262, Florida Statutes (Supp. 1982), which delays the right of an injured plaintiff to sue a liability insurer until judgment is obtained against the insured defendant. I agree with the majority that there is no clear legislative intent to make the statute retroactive and that the statute is not applicable to the case at hand. Inasmuch as this holding disposes of the case, I am loath to go on in dicta to examine the constitutionality of the statute. Nevertheless, since the majority does so, and the issue is of great public importance, I express my view that the statute is unconstitutional because it impermissibly abrogates a right of action which existed under the Florida Constitution of 1885; unconstitutionally denies due process, and unconstitutionally denies or delays the right of access to the courts under sections 9 and 21, respectively, article I, Florida Constitution of 1968.
Shingleton v. Bussey, 223 So.2d 713 (Fla. 1969), overruled Artille v. Davidson, 126 Fla. 219, 170 So. 707 (1936), by holding that an injured plaintiff had a direct cause of action against a motor vehicle liability insurer which accrued concurrently with the right of action against the insured defendant, *884 contingent on the later establishment of liability to judgment of the insured defendant. The tort suit in Shingleton was filed sometime prior to June, 1968, and was controlled by the Constitution of 1885.[1] Under then existing law (Artille), as under section 627.7262 here, a plaintiff could not bring suit against a liability insurer until a judgment was obtained against the insured defendant. As here, the constitutional issue in Shingleton was whether the right of action against the insurer could be denied or delayed until such time as judgment was obtained against the insured defendant. Our answer was an unequivocal no, because, inter alia, "[t]his hardly comports with Section 4, Declaration of Rights, State Constitution [1885], F.S.A., that the courts shall be open so that persons injured shall have remedy by due course of law without denial or delay." 223 So.2d at 717.
In explaining the Shingleton decision, then Chief Justice Ervin rigorously examined, in addition to the constitutional issues, the various public policy factors bearing on liability insurance and the rights of the various parties to such suits. To my mind, Shingleton established beyond a doubt that it is sound public policy to immediately bring all of the real parties in interest into court in order to protect their rights, to facilitate the litigation, and to resolve the dispute. I will not restate in full Chief Justice Ervin's penetrating examination of these public policy factors; in short, he reasoned that motor vehicle liability insurance is commonplace, that it is statutorily required, that it is primarily for the benefit of injured third parties, that the liability insurer is a real party in interest, and that it is unrealistic to defer accrual of the cause of action against the insurer until judgment is obtained against the insured defendant.
If Shingleton were grounded exclusively on the public policy views of this Court, I would agree with the majority that we should yield to a valid, contrary legislative pronouncement and hold the statute constitutional. In fact, however, Shingleton was founded on three independent, but mutually supportive, grounds: public policy; constitutional right of access to the courts and justice without sale, denial, or delay; and the constitutional authority of this Court to promulgate judicial procedure (specifically liberal joinder rules providing due process). Chief Justice Ervin's opinion shows clearly that fundamental constitutional rights (access to courts and due process) are not only consistent with, but serve to advance sound public policy:
In the modern world which is fraught with public safety hazards, it is unrealistic that mass liability insurance coverage designed to afford protective benefits for the general public should contain such condition precedent [no joinder clauses] as a barrier to the right of identified members of the protected class to pursue a speedy, realistic and adequate recovery action. This hardly comports with Section 4, Declaration of Rights, State Constitution [1885], F.S.A., that the courts should be open so that persons injured shall have remedy by due course of law without denial or delay.
Id. at 717.
The rights and the grants and limitations of power embodied in our federal and state constitutions were inserted precisely because they were good public policies; presumably, they still are good public policies. One could, for example, take each of the twenty-three sections of the Declaration of Rights and argue, persuasively, that each is defensible as sound, contemporary public policy. However, one could also argue, unpersuasively I trust, that trial by jury, for example, is too costly and inefficient from a contemporary public policy viewpoint. If the proponents of such a view obtained a legislative majority and enacted a law rescinding the right to trial by jury on public policy grounds, would we be obliged to defer to the legislative pronouncement of public policy? Obviously not; we would be obliged to hold that the statute was unconstitutional. The fact that a legislative act is said to be good public policy is not a basis for deferring to the legislature when a constitutional *885 right is violated. See Markert v. Johnston, 367 So.2d 1003, 1005 n. 8 (Fla. 1978), where we rejected an analagous fallacy that the legislature could encroach on judicial rule making because the rules reflected prevailing public policy, by design or coincidence.[2] Even if one holds that section 627.7262, Florida Statutes (Supp. 1982), deals with substantive rights and that we should yield to the legislature on the separation of powers issue, it does not follow that the legislature may abrogate a right of action which existed under the Constitution of 1885, or may deny due process or delay access to the courts in violation of the Constitution of 1968.
Under the separation of powers doctrine, this Court has the constitutional duty to prescribe rules of judicial procedure. We have recognized that this does not include substantive rights which fall within the constitutional power of the legislature. The esoteric distinctions between procedure and substance are not always easy to define, but whatever the label, neither this Court nor the legislature may deny a litigant procedural due process. Our rules on liberal joinder are not merely prerogatives of this Court which we grant in order to conserve court resources under the rubric of public policy; they also serve to provide procedural due process. Chief Justice Ervin recognized this in Shingleton and I agree with his cogent analysis at page 719: denial of a direct action against the liability insurer may impermissibly serve to defeat recovery and deprive the plaintiff "of an open, speedy and realistic opportunity to pursue by due process his right of an adequate remedy at law jointly against the insured and insurer."
I consider the challenged statute to be an unconstitutional denial of rights arising under article I, sections 9 and 21 of the Constitution of 1968, and would so hold even if this issue were being presented for the first time and we were deciding the issue independently of Shingleton and the Constitution of 1885. However, as a matter of well established law, we must consider Shingleton and the Constitution of 1885 because "[i]t, of course, is assumed that the citizens who adopted the 1968 Constitution intended that the language therein be given the same construction as similar language in the prior Constitution of 1885." Kluger v. White, 281 So.2d 1, 6 (Fla. 1973) (Boyd, J., dissenting) (footnote quoting access to courts provision of 1885 Constitution omitted). I agree with the majority that this statute seeks to "modify" Shingleton by delaying the accrual of the cause of action against the insurer until judgment is obtained against the insured, but in my opinion the modification overturns entirely the only new law stated in Shingleton  that the cause of action against the insurer and insured accrues concurrently. Thus, Shingleton is on all fours with the present case and we are faced with the straightforward issue of whether the legislature may override a decision of this Court based on our construction of the 1885 Constitution which the citizens of the state adopted when they ratified the Constitution of 1968. In my view, emphatically it may not. As we stated approvingly in Reed v. Fain, 145 So.2d 858, 866 (Fla. 1962):
It has been held, and we think with propriety, that "The judicial interpretation of constitutional provisions is so forcible that, where a new Constitution is adopted without change of the rule laid down by the courts, the construction is adopted by the new Constitution and becomes a part of it to the degree that it cannot be changed even by a statute expressly undertaking to do so." Lyle v. State, 80 Tex.Cr.R. 606, 193 S.W. 680 (Italics Supplied [by Reed court].)
In my view, the legislature may not abrogate the concurrent right of action established by Shingleton and ratified by the electorate when they adopted the Constitution of 1968.
*886 I am not persuaded that joinder of an insured and insurer, and litigation of negligence and insurance coverage issues in a single action, is prejudicial to the insurer. I agree with Chief Justice Ervin that jurors are not so immature and naive as to be incapable of impartially deciding issues involving liability insurers. I would add that our constitution provides for the right to a trial by jury and that our legal system has sufficient safeguards to ensure that the injured party, the insured, and the insurer all receive a fair trial from an impartial jury.[3] I note also that the rules of civil procedure provide for stipulations, admissions, pretrial conferences, and partial summary judgments which can be used to expedite trial proceedings by removing the issue of insurance coverage and contingent liability from the jury. If we assume that insurance coverage and contingent liability are either not at issue or that the insurance company has prepared the insurance policy so that it can be plainly read by the trial court so as to determine as a matter of law whether coverage and contingent liability exist, there should be few occasions to present the issue and relevant evidence to the jury. On the other hand, on those occasions when there is a factual issue as to coverage and contingent liability, it is in the interest of all parties, the legal system, and the public, to have this issue timely raised. It may well be the primary issue which will control settlement negotiations, party alignments, and trial strategies. One can visualize almost endless permutations, including whether the plaintiff prosecutes, settles, or dismisses the suit; whether the insured defendant is represented by his own or by insurer's counsel, defends or settles the suit, or brings a third-party action against the insurer; and whether the defendant insurer brings a declaratory judgment action, participates in, settles, or defends the suit. For the reasons aforestated, I would hold section 627.7262, Florida Statutes (Supp. 1982), to be unconstitutional.
ADKINS, J., concurs.
BOYD, Justice, dissenting.
I respectfully dissent to the majority opinion and would hold that section 627.7262, Florida Statutes (Supp. 1982), encroaches upon the authority of this Court to promulgate rules of procedure. I would reaffirm the principles announced in Shingleton v. Bussey, 223 So.2d 713 (Fla. 1969), where this Court recognized that the joinder of parties is a procedural matter.
In Shingleton we determined that persons injured by insured tortfeasors are third-party beneficiaries of the contracts of liability insurance entered into by insureds and their insurers; and that liability insurers are real parties in interest to lawsuits brought against their insureds. The fact that considerations of public policy influenced these determinations does not mean that they were not fully grounded in the Court's rule-making power. See Markert v. Johnston, 367 So.2d 1003 (Fla. 1978).
Since our decision in Shingleton v. Bussey there have been consistent efforts by the insurance industry to change the practice of allowing insurers to be named as defendants in cases where the relation of liability insurer is alleged. On more than one occasion the Legislature has enacted legislation to overrule Shingleton, but this Court has upheld Shingleton because of the Court's rule-making authority. The statute before us would require that the determination of liability under insurance contracts await the determination of liability of insured tortfeasors, even though the accused tortfeasors will, as before, be represented in court by lawyers retained by insurance companies. Under this statute, it may be necessary for additional proceedings to be instituted on the issue of the insurer's liability and to compel the payment of compensation in compliance with the terms of the insurance contract. By requiring that all interested parties be brought before the court at one time, Shingleton v. Bussey *887 served the cause of judicial economy and promoted the interest of all citizens in the speedy and just resolution of lawsuits.
I dissent to the majority opinion and would hold the above statute unconstitutional because it encroaches upon the rule-making authority of this Court.
NOTES
[1] The pertinent portion of the trial judge's order is:

The Court holds that Section 627.7262, Florida Statutes (Supp. 1982), is applicable to this civil action and that plaintiff has failed to satisfy the condition precedent to bringing this action against Hartford Casualty Insurance Corporation by not first obtaining a judgment against Publix Super Markets, Inc.
The Court holds that Section 627.7262, Florida Statutes (Supp. 1982), is constitutional on its face and as applied to the facts and the parties here.
The Court holds that Hartford Casualty Insurance Corporation should be dismissed as a party to this civil action until such time as plaintiff has obtained a judgment against Publix Super Markets, Inc. and thereby satisfied the statutory condition precedent.
[2] The language in Shingleton signalled such enactment to be a proper legislative prerogative.
[1] See Bussey v. Shingleton, 211 So.2d 593 (Fla. 1st DCA 1968), issued 6 June 1968.
[2] Note also that Markert recognized the issue of a concurrent right of action against the liability insurer but chose not to address the issue because the plain language of section 627.7262, Florida Statutes (1977), made it unnecessary.
[3] Safeguards include appeal by right and the responsibility and power of the trial court to ensure a fair trial through jury selection, rules of evidence, jury instructions, directed verdicts, mistrials, remittiturs, and new trials.