I join Justice Cantero's excellent and correct dissent. I would approve the Second District's fair and reasonable decision. I write further to express my substantial concern about the effect of the majority's decision in this case.
I recognize that since this Court's decision in Boston OldColony Insurance Co. v. Gutierrez, 386 So.2d 783 (Fla. 1980), bad faith claims against liability insurers have served a useful role in the regulation of Florida's insurers. I know that there are real incidents of bad faith conduct on the part of insurers in the handling of insurance claims, which are deservedly a basis for bad faith damages. In other words, there is a place for a remedy against insurers that in real situations act in actual bad faith.
On the other hand, I must also recognize that there are strategies which have developed in the pursuit of insurance claims which are employed to create bad faith claims against insurers when, after an objective, advised view of the insurer's claims handling, bad faith did not occur. This is a strategy which consists of setting artificial deadlines for claims payments and the withdrawal of settlement offers when the artificial deadline is not met. The goal of this strategy is to convert a policy purchased by the insured which has low limits of insurance into unlimited insurance coverage.[11]
It is my conclusion that this strategy is what was employed in this case and is the basis of this case. I cannot join in the majority's approval of what I conclude is a created — rather than a real — bad faith claim. Perpetuating this kind of bad faith action is not only wrong on the basis of the claims handling facts in this particular case but is greatly detrimental to Florida's liability insurance consumers because of the increases in their insurance costs.
Obviously, this strategy worked well for the claimants and their attorneys in this particular case. As a result of the majority's reinstatement of the trial court's judgment, the $20,000 of insurance purchased by the insured has been converted into insurance which will pay $1,893,066 to cover the claims plus $616,200 for attorney fees plus interest. It also worked well for the insured, who paid for $20,000 of insurance and was given by the majority's opinion *Page 686 
the benefit of more than $2.5 million of insurance.
Just as it is an obvious truth that "there is no free lunch," likewise, there is no free liability insurance. It is an undeniable fact which follows logic and common sense that bad faith judgments against insurers drive up the premium costs for all insureds, particularly for insureds who purchase low-limits liability insurance policies. Liability insurance is a pool of money. The pool is filled by premiums and drained by claims. When an insured purchases and pays premiums on $20,000 of insurance but the insurer pays $2.5 million in claims, someone has to fill up the pool. Initially, this amount may come out of an insurer's profits, but eventually the someones are the other insureds, whose premiums are increased.
Of course, many Floridians are dependent upon the availability of low-limits insurance policies to meet the statutory financial responsibility requirements of section 324.021, Florida Statutes (2003). It is inescapable that the decision in this case will have a future adverse impact on Florida citizens who need to have this insurance at affordable rates. Their insurance will be more expensive as a result of this decision.
My conclusion is that while bad faith claims based upon substantive wrongful acts by an insurer are a useful part of insurance regulation, such claims must be carefully screened by the courts so that only real — rather than created — bad faith claims provide a basis for a bad faith recovery of damages against an insurer. The present case is an example of a bad faith claim which presents no factual evidence of bad faith claims handling but, rather, presents a claim manipulated for the purpose of creating a bad faith cause of action. I cannot conclude on the basis of an objective analysis of the facts of the handling of the claim in this case that the insurer handled the claim in bad faith. I applaud the decision of the Second District to not affirm the judgment against the insurer.
I do not believe that it is acceptable for the Court to merely say that bad faith is a jury question.[12] It is the Court's responsibility to have logical, objective standards for bad faith and not to avoid setting definitive standards by declaring bad faith to be a jury question. The Court should recognize that it has the responsibility to reserve bad faith damages, which is limitless, court-created insurance, to egregious circumstances of delay and bad faith acts. The Court likewise has a responsibility to not allow contrived bad faith claims that are the product of sophisticated legal strategies and not the product of actual bad faith.
I conclude that what is needed are express guidelines which include set time periods in which all insurers must presumptively make decisions on claims and issue payments. The guidelines should set out the conditions for payments such as for the appointment of guardians. There is also a need for defined penalties for failure to meet these time requirements rather than limitless insurance. In view of this *Page 687 
decision, I regret that there appears to be no alternative but that the guidelines will have to be mandated by statute.
CANTERO and BELL, JJ., concur.
[11] In this case, if settlement had been the goal, settlement would have been completed by July 1, 1990. Since it was not, fourteen years later, there is still no settlement.
[12] Presenting all bad faith cases to a jury does not provide for the objective analysis required. What the jury knows in these cases is that there is a tragically and grievously injured victim, that the insured had very low limits of insurance, and that if the jury finds against the insurer, then all of the victim's damages will be paid by the insurer. It is these very facts which are not allowed to be known by a jury in liability cases because of the known prejudicial influence these facts are known to have on jury verdicts. See § 627.4136, Fla. Stat. (2003); Van Bibber v. Hartford Accident Indemnity Ins. Co.,439 So.2d 880 (Fla. 1983); State Farm Fire Casualty Co. v.Nail, 516 So.2d 1022 (Fla. 5th DCA 1987).