PARIENTE, J., concurring.
I fully concur with the majority's decision to remand for reinstatement of the final judgment and its conclusion that the 2013 legislative amendments to section 90.702, Florida Statutes ("the Daubert amendment"), infringe on this Court's rulemaking authority. I write separately to express my belief that the Daubert[5] *1231 amendment also has the potential to unconstitutionally impair civil litigants' right to access the courts. See art. I, § 21, Fla. Const.[6]
Determining the admissibility of evidence in a civil or criminal case is a quintessentially judicial function. See Johnston v. State , 863 So.2d 271, 278 (Fla. 2003) ("A trial judge's ruling on the admissibility of evidence will not be disturbed absent an abuse of discretion."); Cantore v. W. Boca Med. Ctr., Inc. , 2018 WL 4235334, *3 (Fla. Apr. 26, 2018). This includes the admission of expert opinion testimony.
In deciding whether a particular expert's testimony is admissible, the trial court is guided by the rules of evidence, which require that the expert testimony "assist the trier of fact." § 90.702, Fla. Stat. (2017). Further, as part of its gatekeeping function, the trial court must, if challenged by a party, determine whether the probative value of the evidence is "substantially outweighed by the danger of unfair prejudice." Id. § 90.403. However, once the trial court determines that expert testimony will assist the trier of fact and is not unduly prejudicial, the jury is entitled to hear the expert testimony. Any other approach, in my view, reflects a mistrust of the jury system and the ability of jurors to weigh the evidence.
BACKGROUND
As the majority explains, Frye[7] has been the standard for determining the admissibility of expert testimony in Florida for decades. See majority op. at 1225. Under Frye , "the burden is on the proponent of the evidence to prove the general acceptance of both the underlying scientific principle and the testing procedures used to apply that principle to the facts of the case at hand." Ramirez v. State , 651 So.2d 1164, 1168 (Fla. 1995). Significantly, Frye applies only to "new or novel scientific evidence." Brim v. State , 695 So.2d 268, 271 (Fla. 1997).
In 1993, the United States Supreme Court held that the Federal Rules of Evidence superseded the Frye "general acceptance" test for the admission of expert testimony in federal trials. See Daubert v. Merrell Dow Pharm., Inc. , 509 U.S. 579, 588-89, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). Under the federal rules, instead of determining whether the basis for an expert's opinion was generally accepted in the relevant scientific community, the Court explained that "the trial judge must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." Id. at 589, 113 S.Ct. 2786. The Court noted that this new standard *1232 was intended to be flexible. See id. at 594, 113 S.Ct. 2786 ("The inquiry envisioned by [the federal rules] is, we emphasize, a flexible one."); see also Allison v. McGhan Med. Corp. , 184 F.3d 1300, 1311 (11th Cir. 1999) ("The gatekeeper role [under Daubert ] is not intended to supplant the adversary system or the role of the jury."); Martin L.C. Feldman, May I Have the Next Dance, Mrs. Frye? , 69 Tul. L. Rev. 793, 802-03 (1995) ("The Court declared that the Frye test was superseded by the Federal Rules of Evidence, and thereby outwardly relaxed the standard for admission of scientific evidence.").
Several years after Daubert , the United States Supreme Court concluded that a trial judge may consider additional factors when determining whether expert testimony meets the Daubert standard, including whether a particular theory or technique had been or could be tested, whether it had been subjected to peer review, and whether a particular technique had a known or potential rate of error. Kumho Tire Co., Ltd. v. Carmichael , 526 U.S. 137, 141, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999). Consistent with its intention that the Daubert standard be flexible, the Court explicitly emphasized the word "may." Id.
Despite the Supreme Court's intention that Daubert be applied flexibly, it has been observed that, in actuality, "[t]he gatekeeping role bestowed upon the judiciary has blocked more court access than it has enabled." Allan Kanner & M. Ryan Casey, Daubert and the Disappearing Jury Trial , 69 U. Pitt. L. Rev. 281, 283 (2007). Particularly relevant in this case, defendants often exploit the requirements of Daubert as a sword against plaintiffs' attorneys. See id. at 283-84. Others have written that Daubert has "produced a minefield clogged with 'Daubert hearings' that are more lengthy, technical, and diffuse than anything that preceded them." David Crump, The Trouble with Daubert-Kumho: Reconsidering the Supreme Court's Philosophy of Science , 68 Mo. L. Rev. 1, 1 (2003).
Daubert has limited access to courts in two significant ways. First, Daubert applies in substantially more cases than Frye . As stated previously, unlike Frye , which applies only to testimony which is predicated on new or novel scientific evidence, Daubert applies to all expert testimony. Kumho , 526 U.S. at 147, 119 S.Ct. 1167 (stating that Daubert "applies to all expert testimony"). Therefore, more litigants are exposed to the risk of exclusion of their experts' testimony under Daubert .
Second, in addition to expanding the areas of expert testimony that are subject to challenge, the Daubert analysis involves more than just the Frye consideration of whether "the basic underlying principles of scientific evidence have been sufficiently tested and accepted by the relevant scientific community." Brim , 695 So.2d at 272. Under Daubert , it is the trial judge who must ensure "that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." 509 U.S. at 597, 113 S.Ct. 2786. As explained previously, this is a multi-factor consideration. Id. at 593-94, 113 S.Ct. 2786. In other words, as the majority states, " Frye relies on the scientific community to determine reliability whereas Daubert relies on the scientific savvy of trial judges ...." Majority op. at 1229. The difference as to who makes this reliability determination is not inconsequential, as trial judges, who typically do not possess the requisite training or experience in the expert's field, must fully understand the science before they can even attempt to determine whether it is admissible under Daubert .
THE DAUBERT AMENDMENT
In 2013, the Legislature formally adopted the Daubert standard. See ch.
*1233 2013-107, Laws of Fla. The Florida Bar's Code and Rules of Evidence Committee ("the Committee") recommended that we reject the amendment to the extent it was procedural when we considered the Committee's regular-cycle report last year, citing "grave constitutional concerns," in particular, that the adoption of the Daubert amendment would "deny[ ] access to the courts." In re Amends. to Fla. Evidence Code , 210 So.3d 1231, 1239 (Fla. 2017).
In addition to the constitutional concerns, the Committee believed that the amendment "would overburden the courts and impede the ability to prove cases on their merits." Comm. Report at 10.[8] Citing numerous federal cases, the Committee explained that, because Daubert covers more subject areas and involves a multi-factorial analysis to determine admissibility, versus Frye 's simple "general acceptance" inquiry, "federal courts commonly must conduct multi-day Daubert hearings at substantial cost in time and money." Id. The Committee stated further:
Florida's judges have not been provided the level of resources and time available to their federal counterparts. The impact of Daubert procedures in Florida state courts would only worsen this disparity.
Litigants in all kinds of cases also bear an increased burden. Having to provide a lengthy expert report or answers to interrogatories, then have an expert witness prepare to testify in a deposition and a Daubert hearing, then defend a Daubert motion, all with the hope of being allowed to do it all over again in trial, is very expensive. Daubert "represents another procedural obstacle, another motion, another hearing, and another potential issue on appeal, all causing more delay and expense."
During [Committee] discussions, concerns were raised that litigation offering expert testimony under Daubert increases litigation costs, a prospect that only wealthy litigants can bear. Family and juvenile cases were raised as an example, since these cases often involve parties with lesser financial capabilities who must somehow participate in Daubert hearings or surrender their rights on the merits due to a lack of resources to fund these evidentiary fights. Contingency cases were mentioned as another example, in cases where some litigants will be unable to find counsel to represent them due to increased expenses associated with the use of experts. A final example was presented in hourly rate cases when many litigants may be unable to afford to pursue the merits of their claims because of the expense of Daubert hearings guaranteed to come.
Comm. Report at 11-12 (citation omitted).[9]
The concerns raised by the Committee do not merely exist in the abstract. Attorney Dan Cytryn, a lawyer with "more than 35 years [of experience] almost exclusively *1234 in the area of personal injury," urged this Court not to adopt the amendment because Daubert has made "complex and moderately complex cases ... more expensive to try." Comment by Dan Cytryn at 1, In re Amends. to Fla. Evidence Code , 210 So.3d 1231 ). Cytryn explained that, after Daubert , his law firm "has taken a much closer look at cases that are meritorious , and perhaps are worth under $100,000, but require litigation. [They] have turned down several meritorious cases because of the additional costs and time restraints that Daubert implicates." Id. at 2. While the impact on the workload of the trial courts or the difficulty in finding a lawyer should not be the sole consideration for determining whether a rule of procedure should be adopted, if adoption of the rule is at the expense of litigants' constitutional right to access the courts, then the impact on the workload provides a compelling reason to reject the rule.
The National Association of Criminal Defense Lawyers ("NACDL") raised competing concerns in the battle between Frye and Daubert when we considered the Daubert amendment last year. The NACDL urged this Court to adopt the amendment, arguing that the Frye standard often permits the admission of "flawed scientific evidence." Comment by the NACDL at 2, In re Amends. to Fla. Evidence Code , 210 So.3d 1231 ). The NACDL contended that under Daubert , "the trial court can truly fulfill its critical role as a gatekeeper to ensure that expert testimony is the product of reliable scientific principles and methodology." Id. While I understand the concerns articulated by the NACDL, I am not persuaded that the proper application of the Frye standard is unable to sufficiently guard against these concerns.
As this Court explained in Ramirez v. State , 810 So.2d 836 (Fla. 2001), when applying Frye , a court is not required to determine that evidence is "generally accepted" on the basis of a mere "nose count" of experts in the field. Id. at 844. To the contrary, we explained that the court "may peruse disparate sources-e.g., expert testimony, scientific and legal publications, and judicial opinions-and decide for itself whether the theory in issue has been 'sufficiently tested and accepted by the relevant scientific community.' " Id. (emphasis added) (footnote omitted) (quoting Brim , 695 So.2d at 272 ). We further explained that "[a] bald assertion by the expert that his deduction is premised upon well-recognized scientific principles is inadequate to establish its admissibility if the witness's application of these principles is untested and lacks indicia of acceptability." Id.
In that case, although several of the State's experts testified that the underlying principle of a particular method concerning knife mark evidence was generally accepted in the field, we concluded that such testimony "standing alone is insufficient to establish admissibility under Frye in light of the fact that [the method's] testing procedure possesse[d] none of the hallmarks of acceptability that apply in the relevant scientific community to [that] type of evidence." Id. at 849. Likewise, in Hadden v. State , 690 So.2d 573 (Fla. 1997), we concluded that a psychologist's opinion "that a child exhibits symptoms consistent with what has come to be known as 'child sexual abuse accommodation syndrome,' " which the State sought to admit, "may not be used in a criminal prosecution for child abuse" because it was not generally accepted by a majority of experts in the field. Id. at 575.
I acknowledge that neither Frye nor Daubert is a perfect standard that will seem fair to all litigants in every proceeding. However, this Court's case law makes clear that a proper and thorough application of Frye allows the trial judge to inquire *1235 beyond bare assertions of general acceptance. Daubert , on the other hand, has the potential to infringe on litigants' constitutional right to access the courts. In addition to the time-consuming and potentially cost-prohibitive expense created by Daubert hearings, as well as the onerous barriers to admitting expert testimony, the jury's role in evaluating the merits of the case may nevertheless be usurped even after the trial court has concluded that expert testimony is admissible by an appellate court's overly burdensome application of Daubert , as evidenced by the facts of this case. Accordingly, I do not agree that Daubert is preferable to Frye .
THIS CASE
In this case, after holding Daubert hearings on the plaintiff's experts' testimony, the trial court allowed the experts to testify regarding whether the products of three defendants, which contained asbestos, were a substantial contributing cause of the plaintiff's mesothelioma. Crane Co. v. DeLisle , 206 So.3d 94, 99 (Fla. 4th DCA 2016). The jury asked numerous probative questions during the trial and deliberated for three days before rendering a verdict, in which it apportioned fault against all three named defendants, in addition to a Fabre[10] defendant. Crane , 206 So.3d at 100.
Despite the jury's careful consideration of the case, the Fourth District Court of Appeal reversed for a new trial, concluding that the trial court abused its discretion in admitting three of the plaintiff's expert witnesses who testified regarding causation. Id. ; see majority op. at 1230. As the majority explains, the causation testimony in this case would not have even been subject to a Frye challenge because "medical causation testimony is not new or novel." Majority op. at 1230 (citing Marsh v. Valyou , 977 So.2d 543, 549 (Fla. 2007) ). Similarly, as also noted by the majority, this Court has, for decades, understood that asbestos products "have widely divergent toxicities, with some asbestos products presenting a much greater risk of harm than others." Majority op. at 1230 (quoting Celotex Corp. v. Copeland , 471 So.2d 533, 538 (Fla. 1985) ).
In other words, before Daubert , the testimony of the plaintiffs' causation experts would not have been subject to challenge. Under Daubert , however, an appellate court can usurp both the function of the trial court in ruling on the admissibility of evidence that is neither new nor novel, and the role of the jury in weighing the evidence and rendering a verdict.
CONCLUSION
For the reasons stated, in addition to the majority's conclusion that the Daubert amendment unconstitutionally infringes on this Court's rulemaking authority, I would also conclude that the Daubert amendment has the potential to unconstitutionally impair litigants' right to access the courts in civil cases. The amendment does nothing to enhance the factfinding process, and instead, displays a gross mistrust of the jury system.
LABARGA, J., concurs.

Daubert v. Merrell Dow Pharm., Inc. , 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).

Our state constitution provides that "courts shall be open to every person for redress of any injury, and justice shall be administered without sale, denial, or delay." Art. I, § 21, Fla. Const. We have explained that "[t]his 'openness' and necessity that access be provided 'without delay' clearly indicate that a violation occurs if the statute obstructs or infringes that right to any significant degree."Mitchell v. Moore , 786 So.2d 521, 527 (Fla. 2001). Additionally, because the "right to access is specifically mentioned in Florida's constitution ... it deserves more protection than those rights found only by implication." Id.
Under this provision, this Court has concluded that certain statutes are unconstitutional because they restrict litigants' access to courts. See, e.g. , Westphal v. City of St. Petersburg , 194 So.3d 311, 327 (Fla. 2016) ; Mitchell , 786 So.2d 521. Justice Shaw reached this conclusion regarding a statute that provided "that an injured party has no beneficial interest in a liability policy until that person has first obtained a judgment against an insured." VanBibber v. Hartford Accident & Indem. Ins. Co. , 439 So.2d 880, 882 (Fla. 1983). Justice Shaw believed the statute was unconstitutional, in part, because it "denie[d] or delay[ed] the rights of access to the courts" under the Florida Constitution. Id. at 883 (Shaw, J., concurring in part and dissenting in part).

Frye v. United States , 293 F. 1013 (D.C. Cir. 1923).

Code & Rules of Evidence Comm. Three-Year Cycle Report, In re Amends. to Fla. Evidence Code , 210 So.3d 1231 (Fla. 2017) (cited herein as "Comm. Report").

A joint comment filed by past presidents of The Florida Bar and other members of The Florida Bar echoed this concern:
As many of the signers of this comment know personally, the Daubert Law has overburdened and, if adopted by this Court, will continue to overburden our already overstrained and overworked court system. The Daubert Law has resulted, and will result, in unwarranted delays, costs, and expenses in the administration of justice in every kind of case. These delays, costs, and expenses will be borne not only by the courts but by the litigants and will tend to have the most adverse impact on those who lack financial resources.
Joint Comment by Past Presidents of The Fla. Bar & Other Members of The Fla. Bar at 5, In re Amends. to Fla. Evidence Code , 210 So.3d 1231 ).

Fabre v. Marin , 623 So.2d 1182 (Fla. 1993).