706 So.2d 1370 (1998)
Robert O. KOEHLER and Ann B. Koehler, Appellants,
v.
MERRILL LYNCH & COMPANY, INC., Merrill Lynch Trust Company, Merrill Lynch Life Agency, Inc., Merrill Lynch Insurance Group Services, Inc., Merrill, Lynch, Pierce, Fenner & Smith, Inc., The Manufacturers Life Insurance Company, Thomas Rankin Pate and Marvin G. Ellis, Appellees.
No. 97-00964.
District Court of Appeal of Florida, Second District.
January 30, 1998.
Karla R. Spaulding of James, Hoyer & Newcomer, P.A., Tampa, for Appellants.
David P. Ackerman of Ackerman, Link, Sartory, West Palm Beach, for Appellee Merrill Lynch & Company, Inc.
*1371 Anthony H. Pelle of Katz, Barron, Squitero, Faust & Berman, P.A., Miami, for Appellee Manufacturers Life Insurance Company.
FRANK, Acting Chief Judge.
Robert and Ann Koehler have appealed from the dismissal with prejudice of their complaint for misrepresentation, fraud, breach of fiduciary duty, fraudulent inducement, and negligent supervision in connection with the sale of a life insurance policy to them by the defendants. We reverse because the complaint states a claim and it cannot be determined from the face of the complaint that the action is barred by the statute of limitations.
The Koehlers alleged in their complaint that they relied upon defendant Marvin Ellis and the Merrill Lynch companies for many years to advise them in financial and investment matters. In early 1988, Robert O. Koehler contacted Ellis to discuss some estate planning issues. Ellis, an agent for both Merrill Lynch and Manufacturers Life Insurance Company (ManuLife), introduced Koehler to defendant Thomas Pate, who was also an agent of Merrill Lynch and ManuLife.
Thereafter, over a series of meetings in February or March of 1988, Pate and Ellis told the Koehlers that to facilitate their estate planning goals, Merrill Lynch Trust Company could act as trustee of an irrevocable trust to be created by the Koehlers. They further told the Koehlers that the Trust could purchase a $1,000,000 face value life insurance policy issued by ManuLife that could be paid for in five to six annual cash premium payments of $16,000 each. Defendants Pate and Ellis told the Koehlers that they could obtain the cash for these premium payments by withdrawing $16,000 annually from a life insurance policy owned by the Koehlers that had been issued by Travelers Insurance Company. To determine the effect withdrawal of these funds would have on the Travelers policy, a policy illustration showing partial surrenders of $16,000 a year for five years was obtained from Travelers.
In reliance on these representations, between March and July 1988, the Koehlers signed a number of documents to facilitate the purchase of the ManuLife policy by defendant Merrill Lynch Trust Company as trustee of the Koehler Irrevocable Trust. Later in July 1988, the Koehlers received a partial copy of the ManuLife policy and a Vanishing Premium Plan illustration of the ManuLife policy.
The first page of this Vanishing Premium Plan illustration states that the ManuLife policy offers attractive insurance rates and a very short premium paying period. As a result, policy owners receive the maximum value at the lowest possible cost. The second page of the illustration is highlighted to reflect that cash premium payments would be due for only nine years, but a mark was placed in the margin after year five to reflect the oral representation that the need for cash premium payments would end, or vanish, after five years. Thereafter, any additional premiums due would be paid by dividends generated by the ManuLife policy or by surrender of PUA (paid-up additional insurance), as reflected in the columns of the Vanishing Premium Plan illustration entitled "PUA's SURR TO PAY PREMIUMS and CV [cash value] INCREASE LESS NET PAYMENT." Further, although the Vanishing Premium Plan illustration contained statements that the vanish point could be affected by future changes in the dividends paid by the ManuLife policy, the Koehlers understood from the defendants that these vagaries were covered by the possibility reflected in the Vanishing Premium Plan illustration that cash payments could be required for at most nine years.
Ultimately, the Koehlers received the ManuLife policy, which states that premiums are due each year according to a premium schedule. Furthermore, the policy explicitly stated:
PREMIUMS PAYABLE AT ANNUAL INTERVALS TO SECOND DEATH, OR TO AGE 99 OF THE YOUNGER OF THE SURVIVING LIVES.
The Illustration also contains the following language:
THE TERMS "VANISH" "SUPERVANISH" OR "VANISHING PREMIUM" DO NOT MEAN THAT PREMIUMS ARE NO LONGER DUE, BUT THAT THE *1372 CASH PREMIUM DUE REFLECTS THE PAYMENT OF FUTURE GROSS ANNUAL PREMIUMS THROUGH THE USE OF CURRENT DIVIDENDS. IF FUTURE DIVIDENDS SCALE(S) DIFFER(S) FROM THE CURRENT, RESULTS OF THE VANISH MAY DIFFER FROM THAT ILLUSTRATED.
Some five or six years after receipt of this policy, the Koehlers learned that the defendants' oral representations about the number of cash premium payments they would have to make were false. After the Koehlers had transferred $16,000 per year from the Travelers insurance policy to the ManuLife policy for five years, from 1988 through 1992, they were informed by the defendants that cash premium payments would be required for at least thirteen years before the premium payments would vanish. In April of 1996, the Koehlers filed their complaint for breach of fiduciary duty, negligent misrepresentation, fraudulent inducement, fraud and negligent supervision arising out of the sale by the defendants of the ManuLife policy to the trustee of the irrevocable trust established by the Koehlers.
After dismissal of the original and amended complaints, the Koehlers filed their second amended complaint. Attached were a number of exhibits, including the ManuLife policy, an illustration for the ManuLife policy that was presented by the defendants to the Koehlers, and a copy of an insurance policy and illustration issued by the Travelers Insurance Company from which funds were withdrawn to purchase the ManuLife insurance policy.
The defendants filed motions to dismiss the second amended complaint, asserting, among other things, that the statute of limitations had expired. After a hearing on these motions, the court granted the motions to dismiss with prejudice.
When confronted with a motion to dismiss, the court is required to take the allegations of the complaint as true and to decide only questions of law. See Connolly v. Sebeco, Inc., 89 So.2d 482 (Fla.1956). Furthermore, the defense of statute of limitations may be raised by a motion to dismiss only where its violation appears on the face of the complaint or exhibits. See Toledo Park Homes v. Grant, 447 So.2d 343 (Fla. 4th DCA 1984).
The defendants contended that it was apparent from the ManuLife policy attached to the second amended complaint that the policy specifically required payment of premiums annually until the second death or until age 99 of the younger of the surviving lives. Furthermore, the policy illustration upon which the Koehlers relied specifically disclaimed that the premiums would necessarily vanish; rather "if future dividends scale(s) differ(s) from the current, results of the vanish may differ from that illustrated." Thus, according to the defendants, the Koehlers were put on notice when they received their policy in 1988 that the premiums might not vanish. By waiting until April of 1996 to file their complaint, the four-year statute of limitations for fraud in section 95.11(3)(j), Florida Statutes (1995), had expired and their complaint should be barred. The trial court agreed with this reasoning and dismissed the second amended complaint with prejudice.
It is true that the ManuLife contract and the illustration contain language that whether the premiums will "vanish" is uncertain. The policy requires a continuing obligation to pay the annual premium and discloses the possibility that the dividends from the policy will not be sufficient to cover the annual premium. Because of the changes in the economic environment, with a significant drop in interest rates from the time the Koehlers purchased their policy, the condition that the Koehlers continue to make cash payments became a certainty. However, the gist of the Koehlers' complaints was that the defendants' false or misleading oral representations induced them to purchase the policy. The falsity of these representations could not have been discovered until some years after receipt of the policy.
A cause of action for fraud does not accrue until the basis for the action is discovered or should be discovered through due diligence. § 95.031(2), Fla. Stat. (Supp.1996). The Florida Supreme Court has held that "a recipient may rely on the truth of a representation, *1373 even though its falsity could have been ascertained had he made an investigation, unless he knows the representation to be false or its falsity is obvious to him." Besett v. Basnett, 389 So.2d 995, 998 (Fla.1980). Confronted with a similar lawsuitagainst defendant Manufacturer's Life Insurance Company onlythe United States District Court for the Northern District of Florida concluded that the cause of action was barred by the statute of limitations because the plaintiffs should have known when they received their policy and attached illustrations that the defendant's representations were false. See Person v. Manufacturer's Life Ins. Co., No. 3:96cv116 LAC (N.D.Fla. Oct. 2, 1996).
The trial court in this case apparently relied heavily on the Person case in resolving to dismiss the Koehlers' actions. A critical difference between this case and the Person case, however, is the Koehlers' reliance upon the alleged misrepresentations of their fiduciaries. As stated in Puchner v. Bache Halsey Stuart, Inc., 553 So.2d 216, 217 (Fla. 3d DCA 1989):
Whether an individual, by the exercise of reasonable diligence, should have known he had a cause of action against the defendant is, ordinarily, an issue of fact which should be left to the jury. Furthermore, the obligation of a fraud victim to exercise due diligence is less demanding where the perpetrator is rendering an expert service while standing in a fiduciary capacity. Thus, the issue should have been submitted to the jury. [Citations omitted]
The Koehlers contended that, in reliance upon the defendants' misrepresentations, they were not aware that they would have to continue to make cash payments of $16,000 per year beyond a five or six-year period until they were actually required to make those additional payments. They had not suffered any damage until that time. Whether they were reasonable to rely upon the defendants' representations and to ignore or to fail to read the policy language involves fact questions concerning the circumstances surrounding their decision to enter the insurance contract and whether their own degree of sophistication in such matters should have put them on notice that this was a risky investment subject to market and economic fluctuations. For these reasons, the motions to dismiss should not have been granted.
Reversed and remanded for reinstatement of the second amended complaint.
BLUE, J., and DEMERS, DAVID A., Associate Judge, concur.