952 So.2d 531 (2007)
JoAnn HAZEN, individually and as Trustee of the JoAnn Hazen Revocable Trust, Appellant,
v.
ALLSTATE INSURANCE COMPANY, Appellee.
No. 2D06-184.
District Court of Appeal of Florida, Second District.
January 17, 2007.
*533 Rafael J. Nobo, III, and John Wesley Frost, II, of Frost Tamayo Sessums & Aranda, P.A., Bartow, for Appellant.
William B. Bracken, Jr. of Sidney M. Crawford, P.A., Lakeland, for Appellee.
WALLACE, Judge.
JoAnn Hazen, individually and as Trustee of the JoAnn Hazen Revocable Trust (Hazen), appeals the circuit court's final judgment that dismissed her action against Allstate Insurance Company (Allstate) with prejudice for noncompliance with section 627.4136, Florida Statutes (2002), commonly referred to as the "nonjoinder statute," and for lack of subject matter jurisdiction. Hazen sued Allstate for the breach of an alleged oral agreement to repair Hazen's vehicle. Hazen alleged that her vehicle was damaged as the result of the negligent operation of another vehicle that was insured by Allstate. Because Hazen failed to plead sufficient facts in her amended complaint to allege either compliance with the nonjoinder statute or that the statute was inapplicable, we affirm the circuit court's dismissal of Hazen's action.[1]

I. FACTS AND PROCEDURAL HISTORY
Hazen sued Allstate in the Polk County Circuit Court. Allstate was the sole defendant named in Hazen's action. The circuit court granted Allstate's motion to dismiss Hazen's amended complaint without prejudice and gave Hazen ten days to amend. The order dismissing the amended complaint recited that Allstate's motion was granted "based upon Florida's Non-Joinder Statute and a lack of subject matter jurisdiction." After Hazen declined to amend, the circuit court entered a final judgment dismissing the action. This appeal followed.
The facts pertinent to our review of this case are alleged in Hazen's amended complaint. For purposes of our review, we must assume the factual allegations of the amended complaint to be true, and we construe them in the light most favorable to Hazen as the nonmoving party. See Williams v. Howard, 329 So.2d 277, 280 (Fla.1976); Hosp. Constructors Ltd. ex rel. Lifemark Hosps. of Fla., Inc. v. Lefor, 749 So.2d 546, 547 (Fla. 2d DCA 2000). We apply the de novo standard of review to our consideration of the final judgment dismissing Hazen's action with prejudice. See Smith v. City of Fort Myers, 898 So.2d 1177, 1178 (Fla. 2d DCA 2005).
Hazen is a resident of Polk County, Florida. Allstate is a foreign insurance company that maintains an office or offices in Polk County. On March 9, 2003, Hazen's 2001 Cadillac DeVille was involved in an accident with another vehicle in Mississippi. The owner of the other vehicle was insured by Allstate. The permissive user who drove the other vehicle was negligent. Allstate agreed that its insured was liable for the accident and the resulting property damage.
After Hazen returned to Florida, Allstate contacted her. Allstate agreed to have the Cadillac repaired and to provide Hazen with a rental vehicle. Hazen agreed, and Allstate authorized and paid for the repair of the Cadillac in Louisiana. When the Cadillac was returned to Florida, Hazen discovered that the attempted repairs were inadequate and incomplete. Hazen alleged that the repair effort authorized and paid for by Allstate was so *534 deficient that the Cadillac was not safe to drive and that it was significantly diminished in value. Hazen asked Allstate to reimburse her for the diminished value of the Cadillac, but Allstate refused. Hazen initially stored the Cadillac, asserting that it was not safe to drive. She ultimately sold the Cadillac at what she claimed was a substantial loss.
In her amended complaint, Hazen alleged that Allstate had entered into an oral contract with her for the repair of the Cadillac and to pay such other benefits as were available under the Allstate policy. Hazen alleged further that Allstate had breached the oral contract. She claimed damages in excess of $15,000 for (1) the diminution in the value of the Cadillac, (2) loss of use/rental car costs, and (3) storage fees. Notably, Hazen did not allege that she had obtained a settlement or verdict against either Allstate's insured or the permissive user of the other vehicle.

II. DISCUSSION
A. The Issue
Under the nonjoinder statute, an injured third party may not file a direct action against a liability insurer for a cause of action covered by a liability insurance policy without first satisfying either one of two conditions precedent: (1) obtaining a settlement against the insured or (2) obtaining a verdict against the insured. In this regard, subsection (1) of the nonjoinder statute provides:
It shall be a condition precedent to the accrual or maintenance of a cause of action against a liability insurer by a person not an insured under the terms of the liability insurance contract that such person shall first obtain a settlement or verdict against a person who is an insured under the terms of such policy for a cause of action which is covered by such policy.
§ 627.4136(1) (emphasis supplied). Hazen argues that her acceptance of Allstate's oral offer to provide her with a rental car and to repair her Cadillac was a "settlement" that satisfied one of the two alternative conditions precedent of the statute. Hazen also arguessomewhat inconsistentlythat the settlement agreement with Allstate "ma[de] the Florida Non-Joinder Statute inapplicable." In response, Allstate contends that Hazen did not meet either of the conditions precedent of the statute because Hazen has not obtained a settlement or a verdict against its insured. According to Allstate, the "settlement" referred to in the statute must be against the insured, not with the insurance company.
These arguments raise a question of apparent first impression in Florida concerning whether a presuit undertaking by an automobile insurance carrier with a third party for the repair of property damage and the payment of incidental costs caused by the negligence of the carrier's insured is sufficient either to satisfy one of the conditions precedent described in the subsection (1) of the nonjoinder statute or to render the statute itself inapplicable.[2] To *535 answer this question, we will begin with a brief look at the history of the nonjoinder statute.
B. A Brief History
Florida's first nonjoinder statute was enacted as section 627.7262 in 1976. See ch. 76-266, § 12, at 726, Laws of Fla. This statute was a legislative response to the decisions in Shingleton v. Bussey, 223 So.2d 713 (Fla.1969), and Beta Eta House Corp. of Tallahassee v. Gregory, 237 So.2d 163 (Fla.1970). In Shingleton, our supreme court approved the filing of direct actions by injured third parties against liability insurers in motor vehicle cases under a third-party beneficiary theory. 223 So.2d at 715. In Beta Eta House, the court declared that the principles announced in Shingleton applied "not only to automobile liability insurance but also to other forms of liability insurance." 237 So.2d at 165. This first nonjoinder statute was subsequently declared unconstitutional. See Markert v. Johnston, 367 So.2d 1003 (Fla.1978).
In 1982, the legislature enacted another version of the nonjoinder statute that was also numbered as section 627.7262, Florida Statutes. See ch. 82-243, § 542, at 1553, Laws of Fla. This version of the nonjoinder statute survived a constitutional challenge. See VanBibber v. Hartford Accident & Indem. Ins. Co., 439 So.2d 880 (Fla.1983). Subsection (1) of the 1982 version of the nonjoinder statute provided:
It shall be a condition precedent to the accrual or maintenance of a cause of action against a liability insurer by a person not an insured under the terms of the liability insurance contract, that such person shall first obtain a judgment against a person who is an insured under the terms of such policy for a cause of action which is covered by such policy.
§ 627.7262 (emphasis supplied). Thus, under the 1982 version of the nonjoinder statute, the condition precedent to an injured third party's right to file a direct action against an insurer differed significantly from the version of the statute under review in this case. The 1982 version of the statute required the obtaining of a judgment against the insured as the condition precedent for a direct action against the liability insurer.
In 1990, the legislature amended subsection (1) of the nonjoinder statute by deleting the word "judgment" and substituting in its place the words "settlement or verdict." See ch. 90-119, § 38, at 393, Laws of Fla. At the same time, the legislature further amended the nonjoinder statute by adding a new subsection (4) that addresses the procedure for the joinder of a liability insurer in existing litigation with the insured once either of the conditions precedent of subsection (1) has been satisfied. This new subsection (4) provides:
At the time a judgment is entered or a settlement is reached during the pendency of litigation, a liability insurer may be joined as a party defendant for the purposes of entering final judgment or enforcing the settlement by the motion of any party, unless the insurer denied coverage under the provisions of s. 627.426(2) or defended under a reservation of rights pursuant to s. 627.426(2). A copy of the motion to join the insurer shall be served on the insurer by certified mail. If a judgment is reversed or remanded on appeal, the insurer's presence shall not be disclosed to the jury in a subsequent trial.
*536 Id. at 393-94. In 1992, section 627.7262 was transferred and renumbered as section 627.4136. See ch. 92-318, § 37, at 3110, Laws of Fla.[3]
C. Two Lessons From History
At this point, we pause to note two lessons that we glean from this brief history of the nonjoinder statute. First, the 1982 version of the statute required the entry of a judgment against the insured as a condition precedent to joinder of the insurer in an action on a liability policy brought by a third party. Second, the 1990 amendmentchanging the condition precedent to the joinder of the insurer as a party from a judgment to a settlement or verdictwas made in conjunction with the addition of a new subsection (4) to the statute. The new subsection (4) addressed the procedural aspects of joining the insurer as a party in the context of litigation that is already pending, not a new lawsuit. With these lessons in mind, we turn now to an examination of the procedural aspects of the joinder of the insurer under the 1982 version of the statute and the significance of the changes made by the 1990 amendments.
D. Joining the Insurer: Old and New
Under the 1982 version of the nonjoinder statute, the injured third party had no right of action against the insurer under a liability policy before obtaining a judgment against the insured.[4]See Hett v. Madison Mut. Ins. Co., 621 So.2d 764, 766 (Fla. 2d DCA 1993); Home Ins. Co. of Ill. v. Sentry Ins., 461 So.2d 1038, 1038 (Fla. 4th DCA 1985), receded from on other grounds, Hartford Accident & Indem. Co. v. U.S.C.P. Co., 515 So.2d 998 (Fla. 4th DCA 1987). The procedural effect of the 1982 version of the statute was to require a two-step process for an injured third party to obtain a judgment against an insurer. The injured third party first had to obtain a judgment against the insured. In the second step of the process, the injured third party had to file an independent action against the insurer. See Pink Star Corp. v. U.S. Fire Ins. Co., 546 So.2d 1085, 1086-87 (Fla. 3d DCA 1989); Martin v. S. Broward Topeekeegeeyugnee Park Dist., 541 So.2d 172, 173 (Fla. 4th DCA 1989). This two-step process could be cumbersome, expensive, and inefficient.
In the 1990 amendment to the nonjoinder statute, the legislature addressed these difficulties by adopting new procedures for the joinder of insurers in pending litigation. These new procedures eliminated the need for the two-step process that was required under the earlier legislation. With certain exceptions not material here, the new subsection (4) of the statute provides for the joinder of a liability insurer when a judgment is entered or a settlement is reached during the pendency of litigation. § 627.4136(4). The joinder of the liability insurer under these circumstances *537 is for the purposes of entering final judgment or enforcing a settlement. Id. Joinder may be made on the motion of any party. Id. A copy of the motion to join the insurer must be served on the insurer by certified mail. Id. Thus, under the streamlined procedure adopted in the 1990 amendments, an independent action against the insurer after the entry of judgment against the insured is no longer required.
The addition of subsection (4) to the nonjoinder statute required a conforming amendment to subsection (1). Under the 1982 version of the statute, the condition precedent for joining the insurer in an action was the obtaining of a judgment against the insured. By the time an injured third party obtained a judgment against the insured, it was generally too late to add the insurer as a party in the existing action, and the filing of a new action against the insurer was required.[5] Subsection (4) of the nonjoinder statute eliminates this procedural inefficiency. Under the provisions of subsection (4) in the 1990 version of the statute, the injured third party may move to add the insurer as a party before or at the time of the entry of judgment against the insured. C.A. Seguros Catatumbo v. Herrera, 812 So.2d 576, 577 (Fla. 3d DCA 2002). The amendment to subsection (1) made by the 1990 amendment that changes the condition precedent from obtaining a judgment to obtaining a settlement or verdict against the insured was designed to dovetail with the procedural innovation of subsection (4). The replacement of the requirement for obtaining a judgment against the insured with obtaining a settlement or a verdict against the insured in subsection (1) of the statute provides a workable method for obtaining a judgment against both the insured and the insurer in the same action. Thus the amendment to subsection (1) of the statute and the addition of subsection (4) by the 1990 amendments are not isolated pieces of legislation. Instead, they are part of a unitary procedural innovation that eliminated the two-step process for joining the insurer that was required under the 1982 version of the statute.
E. Analysis of Hazen's Claim that a "Settlement" Occurred
Our review of the history of the nonjoinder statute and the purpose of the 1990 amendments to it provides an appropriate background for the analysis of Hazen's argument that she satisfied one of the alternative conditions precedent of the statute when she reached a "settlement" with Allstate for the repair of her Cadillac. The flaw in Hazen's argument is that it reads the term "settlement" as it is used in subsection (1) of the statute in isolation from the use of the same term in subsection (4). The changes in the critical language describing the operative conditions precedent in subsection (1) and the addition of subsection (4) concerning the joinder of insurers address the same subject matter; they were also enacted as part of a single legislative enactment. Accordingly, they must be read in pari materia. See Major v. State, 180 So.2d 335, 337 n. 1 (Fla.1965); McGraw v. R & R Invs., Ltd., *538 877 So.2d 886, 890 (Fla. 1st DCA 2004). Subsection (4) provides a context for the use of the term "settlement" that is lacking in subsection (1). Subsection (4) refers to a "settlement [that] is reached during the pendency of litigation." In such pending litigation, the insured would necessarily be a party before any settlement could be reached. In addition, subsection (4) speaks of "enforcing the settlement by the motion of any party." Here again, the statutory reference to "settlement" occurs against a backdrop of pending litigation. The references in subsection (4) to a "settlement" in the context of pending litigation and enforcement by motion inform our understanding of the use of the same term in subsection (1). Reading these terms in pari materia, a presuit undertaking or agreement between an injured third party and an insurer about the adjustment of a claim does not satisfy the alternative condition precedent of settlement described in subsection (1) of the statute. Such a presuit undertaking or agreement does not qualify as a "settlement" within the meaning of the nonjoinder statute because it does not occur within the course of pending litigation in which the insured is already a party.
For these reasons, Hazen's argument that she satisfied one of the alternative conditions precedent of the nonjoinder statute by reaching an oral agreement with Allstate for the repair of her Cadillac fails. Hazen did not allege that her "settlement" with Allstate occurred within the course of pending litigation in which the insured was already a party. Furthermore, Hazen did not allege that she had obtained a verdict against Allstate's insured. It follows that Hazen's amended complaint did not allege sufficient facts to satisfy either of the alternative conditions precedent of the nonjoinder statute.
However, our conclusion that Hazen did not satisfy either of the alternative conditions precedent of the nonjoinder statute that would allow her to file a direct action against Allstate does not end our analysis. There is another theory which could arguably support Hazen's attempt at a direct action against Allstate. We turn now to an examination of this other theory.
F. The Insurer's "Agreement" as a New and Independent Obligation
By its terms, the nonjoinder statute applies only to a cause of action which is covered by a liability insurance contract, i.e., a tort action. § 627.4136(1). It follows that the nonjoinder statute does not bar a direct action against an insurer by a third party on an obligation that is independent of the insurance contract. See, e.g., Cresci v. The Yacht, "Billfisher", 874 F.2d 1550, 1551 (11th Cir.1989) (holding that Florida's nonjoinder statute was not applicable to a salvor's action against a marine insurer for the value of the salvor's efforts to salvage a derelict vessel that was covered by a policy of insurance issued by the insurer). Although Hazen has argued that the nonjoinder statute was inapplicable to bar her direct action against Allstate, she has not directed our attention to any authorities that have considered the applicability of a nonjoinder statute or a similar rule to an alleged breach of an insurer's agreement to settle a claim against its insured.
Our independent research disclosed one case that allowed an injured third party's direct action against an insurer to go forward based on the insurer's presuit efforts to negotiate the settlement of claims against its insured. In Howton v. State Farm Mutual Automobile Insurance Co., 507 So.2d 448 (Ala.1987), the plaintiffs sued an insurance carrier in Alabama for breach of contract and the tort of outrage. Id. at 448-49. The basis of the plaintiffs' *539 claims was the breach of an alleged agreement by the insurance carrier to pay for the repairs of damages to the plaintiffs' automobile caused by the carrier's insured. Id. at 448. The trial court granted a summary judgment in favor of the insurer on the basis of a prior Alabama decision. Id. at 449. On appeal, the Supreme Court of Alabama rejected the application of a rule prohibiting direct actions by an injured third party against an insurer prior to the entry of a judgment against the insured under the facts of the case before it. Id. at 450. In explaining its decision, the Alabama court noted that "contracts entered into between a third party and an insurer are mutually enforceable without regard to which of the parties committed the breach." Id. at 450. The court went on to state:
[T]he rule prohibiting direct actions against the insurer has no application where the insurer undertakes a new and independent obligation directly with a nonparty to the insurance contract in its efforts to negotiate a settlement of the third party's claim. Indeed, an insurance carrier is no less liable under the law for the breach of it own contract obligations or for its own tortious conduct than is any other party.
Id. at 450-51. The Alabama court concluded by overruling its prior decision on which the trial court had relied and by reversing the summary judgment in favor of the insurer. Id. at 451. In a later decision, the Alabama court quoted from its opinion in Howton to explain that "[a] `new and independent obligation' exists when `the insurer, acting independently of its insured, enters into a contract with, or commits a tort against, a third-party claimant.'" Williams v. State Farm Mut. Auto. Ins. Co., 886 So.2d 72, 75 (Ala.2003) (quoting Howton, 507 So.2d at 450).
In Hazen's case, as in Howton, the basis of the claim is the breach by an insurer of an alleged agreement for the repair of a motor vehicle. Upon an initial reading, the Howton decision might appear to support a direct action by Hazen on a "new and independent obligation"the alleged agreement with Allstate. We have already noted that the principles barring direct actions by injured third parties against insurers do not apply to actions against insurers that are not based on liability insurance contracts. Nevertheless, we think the reasoning on this point in Howton is unsound. As another court has observed, the Howton opinion does not explain the source of the "new and independent obligation" to which the Alabama court refers. See McWhirter v. Fire Ins. Exch., Inc., 878 P.2d 1056, 1059 (Okla. 1994). Furthermore, in Howton, the existence of the insurance contract was the only reason the insurer had to deal with the third party. McWhirter, 878 P.2d at 1059. Thus there was no legal ground upon which the insurer could be deemed to have acted "independently" of its insured. Viewed another way, a "new and independent obligation" by the insurer could not arise in Howton because there was no consideration for the alleged agreement by the insurer to assume an obligation to the plaintiffs. For these reasons, we conclude that Hazen's amended complaint did not allege sufficient facts to plead that Allstate had assumed an obligation to Hazen that was independent of the liability insurance contract. It follows that the alternative theory based on a new and independent obligation assumed by Allstate will not support Hazen's action either.
G. Two Additional Considerations
Two additional considerations add weight to our conclusion that Hazen's arguments are based on a misreading of the nonjoinder statute. First, the intent of the *540 nonjoinder statute "is to ensure that the availability of insurance has no influence on the jury's determination of . . . damages." Gen. Star Indem. Co. v. Boran Craig Barber Engel Constr. Co., 895 So.2d 1136, 1138 (Fla. 2d DCA 2005) (citing State Farm Fire & Cas. Co. v. Nail, 516 So.2d 1022, 1022 (Fla. 5th DCA 1987)). The adoption of Hazen's argument that a presuit settlement with an insurer in the context of adjusting a claim satisfies one of the conditions precedent of the nonjoinder statute or renders the statute inapplicable would permitif not encourageconsideration of insurance issues together with the determination of liability and damages. Such a result would be inconsistent with the original legislative policy that led to the enactment of the statute. We are unwilling to conclude that the legislature intended to create a loophole allowing direct actions against insurers based on informal undertakings for the repair of damage to motor vehicles when it amended subsection (1) of the nonjoinder statute to delete the word "judgment" and to substitute the words "settlement or verdict."
Second, we believe that the adoption of the view of the nonjoinder statute proposed by Hazen would discourage insurers from undertaking the prompt adjustment and settlement of meritorious claims. Under Hazen's interpretation of the statute, an injured third party could file a direct action against an insurer simply by alleging the breach of a presuit "settlement" arising from an insurer's undertaking to have a vehicle repaired or from some other effort to adjust a claim. Granted, it might be convenient for Hazen and other claimants to be able to sue the insurer directly on a claim of this type without having to join and serve the insured. However, we think that insurers would be reluctant to attempt to settle property damage claims such as Hazen's claim if a mere allegation of the insurer's breach of an oral "agreement" to adjust a claim could lead to a direct action against the insurer. The general reluctance or refusal of insurers to adjust and settle meritorious claims before suit that would likely result from such a procedure would ultimately be detrimental to the motoring public. Although this factor is by no means determinative, it does constitute an additional reason for rejecting as unsound Hazen's interpretation of the nonjoinder statute.

III. CONCLUSION
For these reasons, Allstate's undertaking to repair the property damage to Hazen's Cadillac and to pay incidental costs for which its insured was liable was not sufficient either to satisfy one of the alternative conditions precedent of the nonjoinder statute or to render the statute inapplicable. Accordingly, the circuit court properly dismissed Hazen's action with prejudice after she declined to amend her complaint, and we affirm the final judgment entered by the circuit court.
Affirmed.
WHATLEY, J., Concurs.
CANADY, J., Dissents with opinion.
CANADY, Judge, Dissenting.
The majority adopts a rule requiring that suit be brought by a third party claimant against an insured before an insurer can enter a legally enforceable agreement with the third party to settle the third party's claim. Because I conclude that Florida's nonjoinder statute cannot reasonably be interpreted as establishing such a rule, I dissent.
The core of the majority's holding in this case is that "a presuit undertaking or agreement between an injured third party and an insurer about the adjustment of a claim [fails to] satisfy the alternative condition *541 precedent of settlement described in [section 627.4136(1)]" because "[s]uch a presuit undertaking or agreement does not qualify as a `settlement' within the meaning of the nonjoinder statute." According to the majority's reading of the statute, a settlement must "occur within the course of pending litigation in which the insured [is] already a party."
The majority's understanding of the term "settlement" in section 627.4136 is at odds with both the plain meaning of the statutory text and the statutory purpose which the courts have previously identified as the basis for the statute. And the majority's foray into the statutory history of the nonjoinder statute falls short of providing a persuasive basis for the restrictive reading of the term "settlement" on which its decision relies.
A settlement is "[a]n agreement ending a dispute or lawsuit." Black's Law Dictionary 1404 (8th ed.2004). A settlement may be entered after litigation has been instituted with respect to the claim which is settled. A settlement may also be entered prior to the initiation of litigation. See Global Travel Mktg., Inc. v. Shea, 908 So.2d 392, 400 (Fla.2005) (discussing requirements regarding "[a] presuit settlement on behalf of a minor"). The term settlement has a well-established and unequivocal meaning.
In considering the motion to dismiss for violation of the nonjoinder statute, the circuit court was required to accept the allegations of the complaint as true. See Koehler v. Merrill Lynch & Co., 706 So.2d 1370, 1372 (Fla. 2d DCA 1998) ("When confronted with a motion to dismiss, the court is required to take the allegations of the complaint as true and to decide only questions of law."). Hazen's complaint alleged that an agreement had been reached between Hazen and Allstate. According to the complaint, Hazen reached a settlement with Allstate based on Allstate's "agree[ment] that its insured was liable for the accident and resulting property damage."
When an insurer acting as the agent of its insured enters a settlement agreement, the insured is bound by the agreement. See Pregony v. Custer, 558 So.2d 114, 115-16 (Fla. 4th DCA 1990) ("In this case it is clear [the insurance company] was acting as [the insured's] agent in seeking a settlement of petitioners' possible claims. Eliminating the ability of an insurer to bind its insured in the settlement process would render any attempts to avoid litigation by settlement meaningless and mere academic exercises."); see also Ga. Cas. Co. v. Mann, 242 Ky. 447, 46 S.W.2d 777, 779 (1932) (holding that insurance company is both the insurer and the agent of the insured).
Since Hazenaccording to the allegations of the complainthad "obtain[ed] a settlement . . . against a person who is an insured," the condition precedent for the accrual of a cause of action by Hazen, as a third party, against Allstate, as an insurer, was satisfied and the bar of the nonjoinder statute was not applicable. § 627.4136(1), (2). Based on the plain language of the statute, I conclude that the nonjoinder statute does not protect an insurer from a suit for breach of contract arising from its failure to perform under a settlement agreement the insurer has entered into with a third party on behalf of an insured.
"The cardinal rule of statutory construction is that courts will give a statute its plain and ordinary meaning." Weber v. Dobbins, 616 So.2d 956, 958 (Fla.1993).
When the statute is clear and unambiguous, courts will not look behind the statute's plain language for legislative intent or resort to rules of statutory construction to ascertain intent. In such instance, the statute's plain and ordinary *542 meaning must control, unless this leads to an unreasonable result or a result clearly contrary to legislative intent. When the statutory language is clear, "courts have no occasion to resort to rules of constructionthey must read the statute as written, for to do otherwise would constitute an abrogation of legislative power."
Daniels v. Fla. Dep't of Health, 898 So.2d 61, 64 (Fla.2005) (citations omitted) (quoting Nicoll v. Baker, 668 So.2d 989, 990-91 (Fla.1996)).
The majority does notand could not reasonablycontend that the common, ordinary meaning of settlement is limited to settlements entered after suit has been filed. Instead, the majority concludes that settlement in subsection (1) should be read restrictively because such a reading is supported by the use of the term in subsection (4) as well as the statutory history.
In my view, the majorityby failing to give effect to the plain meaning of settlement in subsection (1)departs from the cardinal rule of statutory construction. In doing so, the majority does not assert that subsection (1) is ambiguous. Nor does the majority assert that the plain meaning of subsection (1) leads to "an unreasonable result or a result clearly contrary to legislative intent." Without first determining that the statute is ambiguous or that enforcement of its plain language is manifestly problematic, the majority embarks on an exercise in "imaginative reconstruction"[6] of the legislature's intent. If such an exercise is ever justified, it certainly is not justified in this case.
Interpreting settlement in subsection (1) in its common and ordinary sense does not create a conflict between subsection (1) and subsection (4). Subsection (4) is most reasonably understood in context as a provision setting forth the particular procedure to be followed when a settlement is reached after suit has been brought. There is no conflict, inconsistency, or tension between a statutory provision providing an exception for all settlements from the operation of the nonjoinder statute and a provision specifying the particular procedure to be followed when a settlement is agreed to during litigation. Full effect can be given to subsection (4) without imposing a restrictive reading in the unambiguous text of subsection (1). Cf. Lareau v. State, 573 So.2d 813, 815 (Fla.1991) ("[W]hen two conflicting or ambiguous provisions of the same legislative act were intended to serve the same purpose, they must be read in pari materia to ascertain the overall legislative intent and to harmonize the provisions so that the fullest effect can be given to each.").
The majority's reading of the statute cannot be persuasively defended on the basis of the purpose of the statute. As the court recognized in VanBibber, 439 So.2d at 883, by enacting the 1983 version of the nonjoinder statute the legislature sought to displace the judicially created rule that "authorized, simultaneously, a suit in tort against a tortfeasor and a claim against that tortfeasor's insurance company." "The legislative intent behind the statute is to ensure that the availability of insurance has no influence on the jury's determination of the insured's liability and damages." Gen. Star Indem. Co., 895 So.2d at 1138; see also Merchs. & Businessmen's Mut. Ins. Co. v. Bennis, 636 So.2d 593, 594 (Fla. 4th DCA 1994) ("Public policy against disclosure of insurance coverage to the jury underlies the non-joinder statute."); *543 Hough v. Huffman, 555 So.2d 942, 944 (Fla. 5th DCA 1990) (stating that "the reason for [the nonjoinder statute] was to prevent undue prejudice to insurance companies, and to avoid `deep-pocket' jury verdicts"). Contrary to the majority's suggestion, the purpose or intent which the courts have identified as the basis for the nonjoinder statute does not support much less requirethe reading the majority has imposed on the statute to justify the dismissal of Hazen's suit against Allstate.
The claim at issue here is a contract claim against an insurer based on the insurer's alleged agreement to settle a tort claim against its insured. Adjudication of the action will not require a determination of the insured's liability and damages. Instead, it will involve determining the existence and scope of the alleged settlement agreement and measuring the damages for the alleged breach of the agreement by Allstate. The insured's liability and damages on the underlying tort claim are irrelevant to the action for breach of the settlement agreement.
Where there is a settlement agreement between an insurer and a third party, the third party has a right of action against the insurer based on the third party's interest in the promise of the insurer made in the settlement agreement. Since there is a direct contractual relationship arising from the settlement agreement, the third party's right of action need not be based on the assertion of a beneficial interest of the third party in the tortfeasor's liability insurance policy. See Philip J. Padovano, Florida Civil Practice § 11.6, at 437 (2007 ed.) ("A settlement agreement creates new contractual rights and duties which may be enforced in place of the underlying claims and defenses.").
The purpose of the nonjoinder statute has no more application to Hazen's claim against Allstate than it would to a claim brought for breach of a settlement agreement that was entered by Allstate after a tort suit had been instituted. Although the tort claim no doubt provides the background for Hazen's contract claim, the tort claim would also provide the background for a suit to enforce a settlement agreement entered during litigationwhich unquestionably is enforceable. It is thus nonsensical to contend thatsimply because a tort claim lurks in the backgroundthe purpose of the nonjoinder statute comes into play.
The statutory history which the majority recounts serves ultimately as nothing more than the springboard for the majority's speculation about the legislature's purpose in adopting and amending the nonjoinder statute. The majority's speculation is based on the unsupported premise that the 1982 version of the nonjoinder statute precluded the enforcement of presuit settlements entered by insurers with third-party claimants. There is no Florida authority to support that understanding of the 1982 version of the statute. And there is significant authority from other jurisdictions to support the conclusion that nonjoinder statutes have no application to settlement agreements between insurers and third-party claimants. See Howton, 507 So.2d at 450-51; see also Railsback v. Mid-Century Ins. Co., 680 N.W.2d 652, 656 (S.D.2004) (stating that "`a claimant may become entitled to bring a direct action where the insurer has taken on a new and independent obligation to the victim as a result of the insurer's efforts to negotiate a settlement of the victim's claim'") (quoting 7 Lee R. Russ & Thomas F. Segalla, Couch on Insurance 3d § 104:6 (2003)).
But even if the majority's view concerning the meaning of the 1982 version of the statute is accepted, it does not justify departing from the plain meaning of the current *544 version of the statute which came into force in 1990.
The majority thus departs from the unambiguous meaning of the statutory text to reach a result that is inconsistent with the purpose that the supreme court and this courtamong othershave identified as the basis for the legislature's adoption of the nonjoinder statute. In doing so, the majority also sets aside the principle that "settlements are highly favored and will be enforced whenever possible." Robbie v. City of Miami, 469 So.2d 1384, 1385 (Fla. 1985); see also Spiegel v. H. Allen Holmes, Inc., 834 So.2d 295, 297 (Fla. 4th DCA 2002) ("Settlement agreements are favored as a means to conserve judicial resources. Courts will enforce them when it is possible to do so."). By adopting a rule under which parties wishing to settle a claim are required to bring suit before entering an enforceable settlement agreement, the majority adopts a rule that is "directly contrary to the policy of the law favoring amicable settlement of disputes and the avoidance of litigation." DeWitt v. Miami Transit Co., 95 So.2d 898, 901 (Fla. 1957). The result of the adoption of this rule will be the needless expenditure of judicial resources and the resources of parties who wish to settle without litigation.
In justifying its decision, the majority makes reference to the "additional circumstance" that Hazen's claim involves "a mere allegation of the insurer's breach of an oral `agreement' to adjust a claim." (Emphasis added.) It is clear from the majority's reasoning, however, that the holding in this case does not turn on the fact that the agreement alleged by Hazen is an oral agreement. Nothing in either the text of the statute or the statutory history recounted in the majority opinion suggests that the nonjoinder statute prohibits the enforcement of oral settlement agreements. Nowhere does the majority state that the nonjoinder statute requires that settlement agreements be in writing. Nothing in the statute suggests any distinction between oral and written settlements.
The majority's policy concerns regarding oral settlement agreements with respect to third-party insurance claims may well have merit. A strong argument might be made for requiring that settlement agreements with respect to third-party claims be in writing. See 7A Lee R. Russ & Thomas F. Segalla, Couch on Insurance 3d § 105.18 ("Typically, a condition precedent to direct action involving either a judgment or agreement requires that the agreement be in writing, and that it be between the insured, the insurer, and the injured claimant."). But it is the legislature's prerogative to consider and act on such policy concerns; such policy matters are not within this court's province.
In the statute of frauds, section 725.01, Florida Statutes (2002), the legislature has addressed the policy issues regarding the enforcement of certain oral promises. The agreement between Hazen and Allstate, however, does not fall within the scope of the statute of frauds. Although a superficial view of the matter might lead to the conclusion that Hazen's action seeks "to charge the defendant upon [a] special promise to answer for the debt, default or miscarriage of another person," § 725.01, a liability insurer's agreement with a third party to settle a claim against an insured does not constitute such a "special promise."
This is so because "the consideration for the promise is in fact . . . desired by the promisor [the insurer] mainly for [its] own economic advantage, rather than in order to benefit the third person [the insured]." Restatement (Second) of Contracts § 116 (1981). See Klag v. Home Ins. Co., 116 Ga.App. 678, 158 S.E.2d 444, 451 (1967) *545 ("[W]here the insurer agrees to settle its potential liability as well as the potential liability of the insured, the oral promise by the insurer to settle or pay the claim against the insured is an original undertaking and need not be in writing."); Ortiz v. Travelers Ins. Co., 2 Mich.App. 548, 140 N.W.2d 791, 793 (1966) (holding that statute of frauds did not bar enforcement of oral settlement agreement between third party and insurer); Zager v. Gubernick, 205 Pa.Super. 168, 208 A.2d 45, 49 (1965) ("The statute of frauds does not apply because the agreement [with third party] was in settlement of defendant's own obligation as insurer, not the debt or default of another."); Carter v. Allstate Ins. Co., 962 S.W.2d 268, 270 (Tex.App.1998) ("When Allstate took the initiative to settle the claim for which its insured had not yet become legally responsible, . . . it was settling not only its insured's potential liability but its own possible obligation to pay and its own duty to defend its insured. The oral promise to settle was an original undertaking, not a promise to answer for the debt of the insured.").
I have three final observations to offer concerning the impact of the rule adopted by the majority. The first point relates to the majority's expressed concern for the "motoring public." The second observation relates to the potential undesirable impact on insurers. The third point concerns the trap created for settling third-party claimants.
With all due respect to the majority which I believe to be acting sincerely and in good faithI must say that I find some irony in the suggestion that allowing the enforcement of presuit settlement agreements "would discourage insurers from undertaking the prompt adjustment and settlement of meritorious claims." What the majority's decision contemplates is that insurers should be allowed to "promptly" settle third-party claims without having any liability for breaching the promises the insurers make to the third-party claimants. According to the majority, requiring insurers to be held accountable for breaching the promises they make "would ultimately be detrimental to the motoring public." In my view, this line of reasoning inverts reality.
The decision the majority makes in this case benefits Allstate, but the rule adopted by the majority is a double-edged sword. If a presuit settlement agreement is unenforceable by a third party against an insurer, can such a presuit agreement be enforced against the third party by the insurer? Under the principle of mutuality of obligation, an agreement that is unenforceable against the insurer cannot be enforced by the insurer. "[M]utuality of obligation is essential to the formation of a bilateral contract." Balter v. Pan Am. Bank of Hialeah, 383 So.2d 256, 257 (Fla. 3d DCA 1980). "It is basic hornbook law that a contract which is not mutually enforceable is an illusory contract." Pan-Am Tobacco Corp. v. Dep't of Corr., 471 So.2d 4, 5 (Fla.1984). Under such an "illusory contract," "neither side may be bound." Id.
As a consequence of the majority's decision, an unwary third-party claimant who enters a presuit settlement agreement with an insurer prior to the expiration of the statute of limitations on the tort claim may well be foreclosed by the statute of limitations from pursuing its tort claim by the time that the third-party claimant learns that the settlement agreement is unenforceable. Such a harsh result is particularly troubling when it flows from a judge-created rule that is inconsistent with the plain meaning of the governing statutory text.
Finally, as the majority notes, the trial court also based the dismissal of Hazen's *546 claim on the ground that subject matter jurisdiction was lacking. It is therefore necessary to offer a brief explanation of why we should not affirm the dismissal on this ground.
It is not clear why the circuit court dismissed the action for lack of subject matter jurisdiction. The circuit court's order simply states that the motion to dismiss is "GRANTED based upon Florida's Non-Joinder Statute and a lack of subject matter jurisdiction." In addition, Allstate's motion to dismiss only alleges that "[t]he Court lacks subject matter jurisdiction," without supporting argument.
"[S]ubject-matter jurisdiction concerns the power of the trial court to deal with a class of cases to which a particular case belongs." Cunningham v. Standard Guar. Ins. Co., 630 So.2d 179, 181 (Fla. 1994). "For purposes of subject matter jurisdiction, the circuit courts of Florida have jurisdiction over any action at law in which the matter in controversy exceeds $15,000, exclusive of interest, costs, and attorney's fees." Allen v. Walker, 810 So.2d 1090, 1092 (Fla. 4th DCA 2002); see § 26.012(2)(a), Fla. Stat. (2005); § 34.01(1)(c), Fla. Stat. (2005). "The jurisdiction of the circuit court is determined by the sums claimed and put into controversy in good faith." Crown Bank v. U.S. Mortgage Network Corp., 705 So.2d 100, 101 (Fla. 5th DCA 1998).
Hazen alleged in her complaint that her damages exceed $15,000. There is no indication in the record that Allstate claimed that Hazen alleged this amount in bad faith. Therefore, the circuit court had subject matter jurisdiction over Hazen's claim. See Allen, 810 So.2d at 1092 ("Here, the complaint sought damages in excess of $15,000. Therefore, the circuit court had proper jurisdiction over the subject matter of the claim.").
Because I conclude that the trial court was not justified in relying on either the nonjoinder statute or a lack of subject matter jurisdiction to dismiss Hazen's action, I would reverse the trial court's decision and remand for further proceedings.
NOTES
[1] Our affirmance of the circuit court's dismissal of Hazen's action on the basis of the nonjoinder statute makes it unnecessary to address the circuit court's conclusion that it lacked jurisdiction of the subject matter of Hazen's action.
[2] Subsection (3) of the nonjoinder statute specifically authorizes liability insurers to insert in their policies provisions that preclude injured third parties "from joining a liability insurer as a party defendant with its insured prior to the rendition of a verdict." § 627.4136(3). Such provisions are generally referred to as "no-action" clauses. See 7 Lee R. Russ & Thomas F. Segalla, Couch on Insurance 3d § 105:4 (1997). The statute declares that such provisions "shall be fully enforceable." § 627.4136(3). Hazen did not attach to her amended complaint a copy of the liability policy issued by Allstate to its insured. Since our consideration of this case is limited by the allegations of Hazen's amended complaint, we need not consider the effect of any no-action clause in Allstate's policy on Hazen's action against Allstate. See Blue Cross & Blue Shield of Michigan v. Halifax Ins. Plan, Inc., 961 F.Supp. 271, 274 (M.D.Fla.1997).
[3] For additional information on the history of the nonjoinder statute in Florida, see generally The Florida Bar. In re Rules of Civil Procedure (Deletion of Rule 1.450(e)), 429 So.2d 311 (Fla.1983); Russel Lazega, Motor Vehicle No-Fault Law Personal Injury Protection (PIP), § 3:10 (West 2006).
[4] The rule adopted in the nonjoinder statute was consistent with the rule that prevailed in Florida before this state's relatively short-lived experiment with direct actions against insurers under Shingleton and Beta Eta House. See Artille v. Davidson, 126 Fla. 219, 170 So. 707, 708 (1936) (stating the rule of nonjoinder in the context of litigation involving an indemnity policy rather than a liability policy), overruled in part by Shingleton, 223 So.2d 713. For a general discussion of an injured third party's right of direct action against an insurer in the absence of statute or contract provisions, see generally 7 Lee R. Russ & Thomas F. Segalla, Couch on Insurance 3d §§ 104:1-:6 (1997).
[5] Adding the insurer after the entry of final judgment might have been possibleat least theoreticallyif a motion to add the insurer as a party had been filed within the time for filing a motion for rehearing under Florida Rule of Civil Procedure 1.530. Cf. C.A. Seguros Catatumbo v. Herrera, 812 So.2d 576, 577 (Fla. 3d DCA 2002) (considering the 1990 version of the statute and suggesting that a motion to add the insurer could be entertained if made within the time for a motion for rehearing). However, the case law under the 1982 version of the statute called for the filing of an independent action. See Pink Star Corp., 546 So.2d at 1086-87; Martin, 541 So.2d at 173.
[6] See Richard A. Posner, Statutory InterpretationIn the Classroom and in the Courtroom, 50 U. Chi. L.Rev. 800, 817 (1983).